PERSONS et al. v. BUFFALO CITY MILLS, Limited.

(Supreme Court, Appellate Division, Fourth Department.   May 7, 1898.)

CORPORATIONS—AGENT—SERVICE OF PROCESS—EVIDENCE.

> At the time of defendant's organization as a corporation, one B., a stock-holder, was appointed manager and treasurer.  He was shown by various affidavits to have acted on behalf of the corporation, to have indorsed and made its commercial paper, and to have conducted correspondence relating to such liabilities, as manager.  An office was maintained in New York City, on the door of which was printed, "Agency of the Buffalo City Mills, Limited."  Service on defendant was by delivering to B. personally, as managing agent, a copy of the summons, at such office.  Until that time he had not, so far as shown, indicated that his relations with defendant had changed or terminated, but in his affidavit he denied having sustained any relation whatever to defendant for several months past.  No person had been designated as agent for service.  *Held*, that the service was sufficient.

Appeal from special term, Erie county.

Action by Henry H. Persons and another, as receivers, against the Buffalo City Mills, Limited, and others.   Defendant company appeals from an order denying a motion to set aside the service of summons. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

C. J. Church, for appellant.
Norris Morey, for respondents.

HARDIN, P. J.   Plaintiffs' complaint states that on the 5th day of October, 1896, the defendant Kruger, under his firm name of E. H. Kruger & Co., made a promissory note in writing to the order of the defendant Buffalo City Mills, Limited, one month after date, for the sum of $1,500, and that the note was not paid at maturity, and demand was duly made, and notice of protest given.   The affidavit of Lawson is to the effect that on the 23d of November, 1897, in an office connected with and adjoining room 29 of the Kemble Building, at 15–25 Whitehall street, in the city of New York, he served the summons upon the Buffalo City Mills, Limited, by delivering to Andrew Brown, personally, as manager of the Buffalo City Mills, Limited, a true copy of the summons; and the affiant further states:

> "That upon the directory in the main hall of said Kemble Building at the time of such service there appeared the name of 'Buffalo City Mills, Limited'; and the location of the office of the said Buffalo City Mills, Limited, appeared on said directory opposite to such name, 'Room 29, 3d floor.'  Deponent further says that upon the door of room 29, upon the 3d floor of said Kemble Building, at the time of such service, there was printed the following: 'Agency of Buffalo City Mills.' "

Mr. Persons, in his affidavit, states that he is one of the receivers of the Bank of Commerce, and that among the assets of the bank he found a large amount of commercial paper—

> "Amounting to about $160,000, made or indorsed by the defendant the Buffalo City Mills, Limited, E. H. Kruger & Co., M. H. Brown, Andrew Brown, and the Acme Wood-Fiber Company;  the signature upon such paper of E. H. Kruger & Co., of Mary H. Brown, signed by Andrew Brown as attorney, and

of Acme Wood-Fiber Company, by Andrew Brown as president; and all the paper made or indorsed by the defendant with the name 'Buffalo City Mills, Limited,' was signed by 'Andrew Brown, Manager.'"

His affidavit states in detail the investigations made, which revealed the connection of Andrew Brown with the paper, and with the management of the Buffalo City Mills, Limited; and a large amount of the paper so held by the bank was offered by said Brown as manager of the Buffalo City Mills, Limited, and he procured the discount thereof in behalf of the appellant. His affidavit also details interviews held with Brown, and attempts and efforts and negotiations to adjust the paper held against the appellant and the other parties mentioned, and states several declarations and assertions made by Brown in the interest of, and in behalf of, the Buffalo City Mills, Limited; and he further states that during such negotiations—

"Brown has never stated or intimated, in conversation or in correspondence, that his relations and duties as manager of the Buffalo City Mills, Limited, had changed, or that he had ceased to be manager for that company, or that there was any other person who had taken his place, or who had charge of or was connected with the business of the Buffalo City Mills, Limited, at New York, or in the state of New York."

The affidavit also states numerous other facts tending to show the activities of Brown in behalf of the appellant.

The matter stated in Persons' affidavit is corroborated by an affidavit of Mr. Hazel, the other receiver. Subjoined to their affidavits are several letters received by them in respect to the notes held by the Bank of Commerce. Kamp's affidavit states that at the time of the organization of the Buffalo City Mills, Limited, Brown was a subscriber for shares of stock; and his affidavit further states that at a meeting of the stockholders on May 8, 1894—

"Andrew Brown was appointed manager of the company at an annual salary of $6,000; and the manager, by resolution, was also authorized to act as treasurer of the company, to receive and disburse all moneys of the company, and to sign and indorse for the company all promissory notes, checks, drafts, and other obligations calling for the payment of money."

The affidavit of Brown, to the effect "that he is not the cashier, treasurer, or managing agent of the said Buffalo City Mills, Limited, within the state of New York, or any other place, and that he has no connection with the said Buffalo City Mills, Limited, as employé, agent, stockholder, or director of said corporation, and that he has no connection with said Buffalo City Mills, Limited, in any way whatever, nor has he had for several months past," is an unsatisfactory and insufficient proof that he had ceased to be a managing agent, when read in connection with the affidavits and proofs furnished by the respondents in opposition to the motion to set aside the service of the summons. In Kieley v. Manufacturing Co., 13 Misc. Rep. 85, 34 N. Y. Supp. 106, it was held that:

"Where it appears that a person has been managing agent for a corporation, the burden rests upon the corporation to show a termination of such relation."

Upon all the proofs submitted at the special term, we think it was warranted in reaching the conclusion that the defendant had not

successfully borne the burden required of it.    Donadi v. Insurance Co., 2 E. D. Smith, 519.    In Taylor v. Association, 136 N. Y. 346, 32 N. E. 993, it was said:

"Where there is conflicting evidence with respect to a disputed fact arising upon a motion, it is the province of the court in which the motion was made to settle the conflict."

In that case it was further said:

"A managing agent must be some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity, and under the direction and control of superior authority, both in regard to the extent of his duty, and the manner of executing it."

In that case there only appeared the relation of attorney and client, and it was held that that did not constitute such an agency as is required by the Code.    That case is referred to in Palmer v. Evening Post Co., 85 Hun, 403, 32 N. Y. Supp. 992, and satisfactorily explained.

In Wamsley v. H. L. Horton & Co., 68 Hun, 549, 23 N. Y. Supp. 85, an affidavit was produced to the effect that Horton was not a managing agent at the time of the service of the summons, and in opposition to such an affidavit it was shown that Horton was chairman of the board of directors; and in reply thereto Horton stated, in an affidavit:

"That he was not such chairman when the summons was served upon him. He does not deny that he was chairman in September last, nor that he is the principal owner of the stock of the defendant."

In commenting on the situation thus presented, the court observed:

"He thus, in substance, admits the facts stated in the opposing affidavit, but seeks to avoid them by the statement that though he was chairman in September, 1892, he was not chairman on the 9th of January, 1893.    In my judgment, he was called upon to state the facts which effected the change.    It may well be that in law he is still chairman, notwithstanding his belief to the contrary.    When we know the precise facts with regard to the alleged change in the situation, we will be better able to judge whether the broad assertion that he was not chairman on the 9th day of January, 1893, is an accurate statement of fact, or an accurate conclusion from the actual facts."

That case was affirmed.    139 N. Y. 656, 35 N. E. 208.

In Pope v. Manufacturing Co., 87 N. Y. 140, it was said that the object of all service of process for the commencement of a suit or any other legal proceeding "is to give notice to the party proceeded against, and any service which reasonably accomplishes that end answers the requirements of natural justice and fundamental law." No one can read the affidavits, letters, correspondence, and proofs submitted at the special term without reaching the conclusion that the service of the summons made in this case was sufficient to arrest the attention of the Buffalo City Mills, Limited, and that its interests and rights will be protected and asserted.    The affidavits and proofs at the special term presented a case quite unlike Reddington v. Mariposa, 19 Hun, 405, cited by the learned counsel for the respondents. The affidavits used at the special term clearly indicate that no person had been designated upon whom service might be made, by filing a designation thereof in the office of the secretary of state, and that no officers were to be found in the state of New York upon whom service

could be made. We think the special term reached the proper conclusion upon all the affidavits and proofs before it, and that its order should be sustained.

Order affirmed, with $10 costs and disbursements. All concur.